I,ARMSTRONG, Judge.
This is a wrongful incarceration ease. The plaintiff, Lloyd Carlton, was incarcerated pursuant to a capias and detainer issued by the Orleans Parish Juvenile Court. He then was kept incarcerated by the Orleans Parish Criminal Sheriff for more than 72 hours, without being brought before a judge, in violation of Article 230.1 of the Louisiana Code of Criminal Procedure.
Mr. Carlton sued a number of defendants but only two, the Sheriff and the City of New Orleans (through the New Orleans Police Department), remained as defendants in the case at the time of trial. Following a bench trial, the trial court rendered judgment in favor of both the Sheriff and the City and dismissed Mr. Carlton’s suit. For the reasons that follow, we affirm.
The proceedings resulting in Mr. Carlton’s incarceration arose when he became in arrears in child support payments. A hearing regarding those child support payments was scheduled by the Juvenile Court and Mr. Carlton was ordered to appear. Sometime before that juvenile court appearance date, Mr. Carlton was arrested for driving while intoxicated in the Hammond area and he was sentenced to a jail term in Hammond on that charge. He Rhad someone call the Juvenile Court with the information that he was in jail in Hammond and so would not be present at the court appearance in Juvenile Court.
The Juvenile Court issued a “capias”, also captioned a “detainer”, for Mr. Carlton to be arrested and brought to New Orleans. When Mr. Carlton completed his jail term in Hammond, he was arrested there and brought to New Orleans, where he was booked and incarcerated by the Sheriff. The Sheriff then delivered a written notification to the Juvenile Court that Mr. Carlton had been arrested and incarcerated pursuant to the capias and detainer issued by the Juvenile Court.
There was a standard procedure, unwritten but, apparently well-established, whereby incarcerated persons such as Mr. Carlton would be brought before the Juvenile Court. After the person was arrested and incarcerated, the Sheriff would deliver a written notification of that to the Juvenile Court Clerk’s Office. Then, the Juvenile Court Clerk’s Office would execute an acknowledgment of receipt of that notification, record the fact of that notification in a book kept for that purpose and pull and forward the appropriate record to the Minute Clerk for the Section of the Juvenile Court that had ordered the arrest of the incarcerated person. The Minute Clerk would then prepare a written release and give it to the New Orleans police officer assigned to that section of the Juvenile Court so that the police officer would bring the incarcerated person to court to appear before the judge. Normally, that appearance before the judge would be scheduled for the next day. The police officer would contact the Sheriffs Office, which would prepare the incarcerated person to be transported to court, and the police officer would then pick up the incarcerated person and bring him or her to Juvenile Court and before the judge. Apparently, this process results in the incarcerated person being brought before the judge within seventy-two hours of arrest.
In the present case, the system went awry at the Juvenile Court Clerk’s Office. As mentioned above, the Sheriff delivered a written notification to the Juvenile Court Clerk that Mr. Carlton had been arrested and incarcerated. The Juvenile Court Clerk’s Office executed an acknowledgment of receipt of that notification. The fact of the notification also was noted in the Juvenile Court Clerk’s book. However, Mr. Carlton’s record was not forwarded to the Minute Clerk for the section that had ordered him *78 arrested and, thus, that Section’s ^Minute Clerk never learned that Mr. Carlton had been arrested and was incarcerated. Consequently, the Minute Clerk never prepared the release and the police officer assigned to that Section never was informed to go and get Mr. Carlton to bring him to court.
The net result of the above-described administrative breakdown was that Mr. Carlton simply remained incarcerated without being brought before the judge. In fact, Mr. Carlton was incarcerated for one-hundred and four days before the error was discovered and he was released.
Mr. Carlton sued the Juvenile Court Clerk, the District Attorney, the Minute Clerk of the Section which ordered Mr. Carlton arrested, the Sheriff and the City (through the NOPD). The District Attorney, the Juvenile Court Clerk and the Minute Clerk were dismissed as defendants from the suit pursuant to exceptions of no cause of action based upon immunity. Thus, the case went to trial against only the Sheriff and the City. The trial court expressly found that the Sheriff was not at fault and that the police officer never was notified to get Mr. Carlton.
There really is no dispute that the Juvenile Court Clerk’s Office made the error that caused Mr. Carlton’s prolonged incarceration. However, Mr. Carlton advances three arguments on appeal. First, that the Sheriff is liable, apparently regardless of fault, because Article 230.1 makes the Sheriff responsible either to present the incarcerated person to the judge or release that person within seventy-two hours. Second, that the Sheriff is liable for negligence in not having a system to, in effect, catch errors by the courts such as occurred in this case. Third, that the City is hable because the role of the police officer in the process of bringing an incarcerated person before the judge of the Juvenile Court makes the City a joint venturer with the Sheriff (and, presumably, the other involved agencies) and hable along with the Sheriff.
We believe that Mr. Carlton’s first argument, that the Sheriff is hable, apparently even without fault, for a violation of Article 230.1, is not supported by either the language of that article or by the caselaw applying it. Article 230.1 states:
A. The sheriff or law enforcement officer having custody of an arrested person shah bring him promptly, and in any case within seventy-two hours from the time of the arrest, before a | Judge for the purpose of appointment of counsel. Saturdays, Sundays, and legal hohdays shah be excluded in computing the seventy-two hour period referred to herein. The defendant shah appear in person unless the court by local rule provides for such appearance by telephone or audio-video electronic equipment.
B. At this appearance, if a defendant has the right to have the court appoint counsel to defend him, the court shall assign counsel to the defendant. The comí may also, in its discretion, determine or review a prior determination of the amount of bail.
C. If the arrested person is not brought before a judge in accordance with the provisions of Paragraph A of this Article, he shall be released forthwith.
D. The failure of the sheriff or law enforcement officer to comply with the requirements herein shall have no effect whatsoever upon the validity of the proceedings thereafter against the defendant.
La.Code Crim.Proe. art. 230.1.
Of course, Article 230.1 does not, itself, provide for any civil liability for its violation. However, in State v. Wallace, 392 So.2d 410, 413 (La.1980), the Supreme Court held that a person incarcerated, without being brought before a judge within 72 hours, in violation of Article 230.1, does have a civil cause of action for damages.
We note that a person who is not brought before a judge within 72 hours of his arrest, as required by art. 230.1 A, not only is statutorily entitled to obtain release, but also has a claim for civil damages resulting from violation of the article’s mandate. When an arrested person is released within (or at the expiration of) 72 hours, the sanction of release does not come into play, and the arrested person has only a claim for civil damages and then only if his initial arrest and the detention (of less than 72 hours) were illegal. But when an arrested person is held in custody *79 more than 72 hours without being brought before a judge, then any detention thereafter is illegal, whether or not the initial detention was proper, and that detention (in excess of 72 hours) gives rise to (1) the right to immediate release and (2) a claim for civil damages for that illegal detention.
392 So.2d at 413. But, the Wallace case does not state that the sheriff holding the incarcerated person is liable for damages when the violation of Article 230.1 is the fault of some other government agency and not the fault of the sheriff. Nothing in Wallace suggests that the sheriff is liable without fault for a violation of Article 230.1.
Mr. Carlton cites Mitchell v. Windham, 469 So.2d 381 (La.App. 3rd Cir.1985), and in that case a sheriff was held liable for a violation of Article 230.1. However, in that case Rit appears that only the sheriff was involved in incarcerating the plaintiff more than seventy-two hours without taking him before a judge. In fact, it appears in that case that the sheriff admitted negligence. “The sheriff admitted that the plaintiff should have been brought before a judge within 72 hours of his arrest, exclusive of Saturday and Sunday, and that there was a ‘mistake’ made in not bringing him before a judge.” 469 So.2d at 385-86. Thus, the Mitchell case is not helpful to Mr. Carlton.
It is the normal, if not universal, rule that one is liable in tort only if one is at fault. La.Civ.Code art. 2315. In fact, with important exceptions where fault is based upon strict liability under applicable statutory or easelaw rules (e.g. Civil Code articles 2317, 2320 or products liability), tort liability usually is based upon intentional misconduct or negligence. See generally, e.g., Hill v. Lundin and Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). We believe that, in the present ease, the Sheriff can be liable to Mr. Carlton only if the Sheriff was negligent as to the violation of Article 230.1.
This brings us to Mr. Carlton’s second argument, which is that the Sheriff was negligent. We do not see any negligence by the Sheriff in this ease. The trial court expressly found that the violation of Article 230.1 was not the Sheriffs fault and that conclusion is apparent to us as well. The Sheriff promptly (the day after the arrest) notified the Juvenile Court Clerk of Mr. Carlton’s incarceration and, in fact, did so in writing. The Sheriff even took the precaution of having the Juvenile Court Clerk’s Office execute an acknowledgment of receipt of that notice. The Sheriff then was entitled to rely upon another government agency, the Juvenile Court, to undertake its part of a well-established procedure. There is no evidence there had been previous mishaps similar to the present case nor was there any other evidence that the Sheriff should have been on notice not to rely upon the Juvenile Court. (Of course, because of the events of the present case, the sheriff now does have some notice as to whether to rely on a clerk of court, and this could impact the analysis in any future, similar case.)
Mr. Carlton’s third argument, that the City was a joint venturer with the Sheriff, is mooted by our holding that the Sheriff is not liable. Nor is there any basis to hold the City independently liable. As the trial court correctly found, there was no evidence that thejjspolice officer assigned to the Section of the Juvenile Court that had Mr. Carlton arrested was ever informed that Mr. Carlton had been arrested and was incarcerated. Therefore the police officer had no reason to get Mr. Carlton and bring him before the judge.
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED